IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **FEDERATED RURAL ELECTRIC** : | |
| **INSURANCE EXCHANGE,** : | |
| : | |
| **Plaintiff** : | |
| : | |
| v. : | 5:03-CV-247 (WDO) |
| : | |
| **R.D. MOODY & ASSOCIATES, INC. and** : | |
| **MASTEC NORTH AMERICA,** : | |
| : | |
| **Defendants** : | |

**ORDER**

This case arose out of an accident that occurred on May 27, 2000 when Thomas Smith came into contact with a downed power line owned by Plaintiff Washington Electric Membership Corporation ("WEMC") and constructed by Defendant R.D. Moody & Associates ("Moody"). Smith sustained serious injuries from the accident and eventually died of those injuries. Mr. Smith's widow sued WEMC and its engineering firm for her husband's injuries and death. That case was settled with Plaintiff Federated Rural Electric Insurance Exchange ("Federated"), paying $6,500,000 on behalf of WEMC and the engineering firm paying $500,000. Defendant Moody was not a part of that case or the settlement. WEMC thereafter filed this case against Defendants Moody and MasTec for indemnification and contribution. Moody constructed the power lines and utility poles in question and MasTec is Moody's successor in interest, as a result of a June 1998 merger. WEMC alleges that Moody negligently constructed the power lines and utility poles. The matter is now before the Court on Defendants'

1

motion for summary judgment in which the Defendants assert the following:

1. The Florida Insurance Guaranty Act ("FIGA") bars this action as it prohibits member insurers from suing the insureds of other member insurers that have been declared insolvent.

2. One of the contracts pursuant to which Moody constructed the poles provided that all risks and obligations Moody may owe to WEMC with respect to personal injuries were terminated when Moody delivered possession and control of the poles to WEMC.

3. Federated is barred from bringing the claims in this case against Moody and MasTec because WEMC and Moody agreed in their contracts to shift all risk of liability to their insurance policies.

4. Moody ceased to exist as a corporation upon its merger into MasTec, nearly two years before the incident involving Mr. Smith.

*Summary Judgment Standard*

Summary Judgment is appropriate when the pleadings, depositions and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Supreme Court has explained that the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

A party who fails to make a showing sufficient to establish the existence of an

> element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact."

*Choice of Law*

The first issue that must be decided is what law should govern this action. WEMC is a Georgia corporation that provides electrical services in Washington County, Georgia. Federated is a Kansas corporation according to the policy.[1] Although WEMC initially filed this suit, Federated was later substituted for WEMC as the proper Plaintiff since Federated paid the settlement money to Mrs. Smith on behalf of WEMC. Moody was a Florida corporation. MasTec is a Florida corporation and is the successor in interest to Moody as a result of the 1998 merger.

Because this case is before the Court on diversity jurisdiction,[2] this Court must apply Georgia's choice of law principles. Briggs & Stratton Corp. v. Royal Globe Ins. Co., 64 F. Supp.2d 1340, 1342 (M.D. Ga. 1999). Georgia courts resolve choice-of-law issues "through a

---

[1] See Bates Number WEMC4210: listing the address of the company as Lenexa, KS and noting that the contract was entered into in Lenexa, Kansas.

[2] The parties have not specifically argued the issue of diversity. However, the record indicates that Federated is a Kansas corporation, that WEMC is a Georgia corporation, that Moody and MasTec are Florida corporations and that Reliance is a Pennsylvania Corporation. Considering the parties' diversity of citizenship and the fact that the amount in controversy far exceeds $75,000, the Court is satisfied that it has diversity jurisdiction over the claims in this case.

3

tripartite set of rules, which are lex loci contractus, lex loci delicti, and lex fori.  Under the rule of lex loci contractus, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply."  Federal Ins. Co. v. National Distributing Co., Inc., 417 S.E.2d 671, 673 (Ga. App. 1992) (citation omitted).  "With regard to insurance contracts, Georgia law provides that the last act essential to the completion of the contract is delivery; consequently, insurance contracts are considered made at the place where the contract is delivered."  Johnson v. Occidental Fire and Cas. Co. of North, 954 F.2d 1581, 1584 (11th Cir. 1992) (citing Iowa State Travelers Mutual Assn. v. Cadwell, 147 S.E.2d 461 (Ga. App. 1966); Avemco Insurance Co. v. Rollins, 380 F. Supp. 869 (N.D. Ga.), *aff'd*, 500 F.2d 1182 (1974)).  Where a "contract is executed in a foreign state and contains nothing to indicate that it was intended to be construed as a Georgia contract, it will be treated as a contract of the foreign state, and governed by its laws, unless the foreign state's laws are contrary to the public policy of this state."  National General Ins. Co. v. United Services Auto., 482 S.E.2d 727, 729 (Ga. App. 1997).  "Under the rule of lex loci delicti, tort cases are governed by the substantive law of the state where the tort was committed."  Federal Ins. Co., 417 S.E.2d at 673.  "Under the rule of lex fori, procedural or remedial questions are governed by the law of the forum, the state in which the action is brought."  Id.  Georgia's choice of law rules permit federal courts to apply another state's statutes in a case before the court on diversity.  Briggs, 64 F. Supp.2d at 1343.  Parties may also by contract stipulate that the laws of another jurisdiction will govern a particular transaction.  Mills v. Berlex Laboratories, Inc., 510 S.E.2d 621, 623 n.1 (Ga. App. 1999).

4

Finally, "Where a provision in a policy is susceptible to two or more constructions the court will adopt that construction which is most favorable to the insured." Briggs, 64 F. Supp.2d at 1345.

In the case at bar, Georgia law could apply because the contracts between WEMC and Moody involved construction of power lines and poles in Washington County, Georgia. The underlying tort - Moody's allegedly negligent construction of the poles - happened in Georgia. However, Moody argues that the law of Florida applies to the question of whether this suit may be brought at all based on Federated and Reliance, Moody's insurer, being member insurers of Florida's insolvency pool and thus subject to FIGA.[3]

Pursuant to the FIGA, a "covered claim" "means an unpaid claim, . . . which arises out of, and is within the coverage, and not in excess of, the applicable limits of an insurance policy to which this part applies, issued by an insurer, if such insurer becomes an insolvent insurer and the claimant or insured is a resident of this state at the time of the insured event or the property from which the claim arises is permanently located in this state." F.S.A. § 631.54(3). A "covered claim" does not include an amount due an insurer sought directly through a third party as subrogation, contribution or indemnification. Id. at (3)(a). Finally, "Member insurers shall have no right of subrogation, contribution, indemnification, or otherwise, sought directly or indirectly through a third party, against the insured of any insolvent member." Id. at (3)(b).

This case involves a "covered claim" pursuant to FIGA because the alleged tort and contract involve insureds (Moody and MasTec) who were insured by policies issued by an

---

[3]FIGA "establishes procedures for the Florida Department of Insurance to deal with insurers having financial difficulties and for the payment of covered claims of insolvent insurers within certain limitations specified under this chapter. Part II of the chapter referred to as the Florida Insurance Guaranty Association Act (FIGA) creates a nonprofit corporation to provide a mechanism to guaranty and pay certain claims on behalf of insolvent insurers." Queen v. Clearwater Elec., Inc., 555 So.2d 1262, 1264 (Fla. App. 2 Dist. 1989). Georgia has similar procedures as described in Title 33, Chapter 36 of the Official Code of Georgia.

insurer (Reliance) that has been declared insolvent and the claimant (Federated) and the insureds were residents of Florida at the time of the insured event (the allegedly negligent construction of the poles).[4]  Reliance was declared insolvent by the Commonwealth Court of Pennsylvania on October 9, 2001.  Although it would seem that the exclusion for amounts due an insurer through subrogation, contribution or indemnification would operate to exclude the claims in this case from FIGA, FIGA clearly mandates that member insurers "shall have no right of subrogation, contribution, indemnification, or otherwise,  against the insured of any insolvent member.  The parties do not dispute that Federated and Reliance were "member insurers" as defined in FIGA.

Federated argues that even if FIGA applies, there has been no "claim"filed that would trigger the application of FIGA to this case.  Federated is incorrect.  First, "the duty of the Florida Insurance Guaranty Association (FIGA) to defend a claim against an insured party is identical to that of the insolvent insurer, and, as such, is triggered when the complaint alleges facts that fairly and potentially bring the action within policy coverage."  Jones v. Florida Ins. Guar. Ass'n, Inc., 908 So.2d 435, 438 (Fla. 2005).  Therefore, for the purposes of this case, a "claim" was filed when Federated filed this suit against Moody, an insured of Reliance, a member insurer that has been declared insolvent.  Second, this is supported by the evidence submitted in this case.  On October 6, 2003, defense counsel sent a letter to Reliance providing Reliance notice that a case had been filed against Moody and MasTec and asking Reliance to provide coverage.[5]  A "claim" has therefore been made to Reliance.

---

[4] See Bates Number WEMC3290: policy between Reliance and Moody for the period between May 1, 1997 and May 1, 1998.  At the time of the May 27, 2000 incident involving Mr. Smith, MasTec was insured under a commercial liability policy issued by Reliance having a policy period from May 1, 2000 to August 1, 2000.  See Anna Morales Decl. (R. at 69).

[5] See R. at 75, Ex. N.

Federated also argues that application of FIGA would be contrary to Georgia public policy because of ways in which the two statutory schemes differ.  However, they do not differ in any way that *violates* Georgia's public policy.  First, Georgia's insolvency statute also provides that member insurers shall not have a cause of action against the insured of an insolvent insurer "for any sums it has paid out."  O.C.G.A. §33-36-6(d).  Further, Georgia's insolvency statute contains its own choice of law provision which provides that the sole recovery for claims other than those for workers' compensation or destruction of property "shall be under the insolvency fund or its equivalent of the state of residence of the insured."  O.C.G.A. § 33-36-10(a)(3).  In this case, that would be the State of Florida.  Therefore, Federated failed to present evidence of how application of FIGA would violate Georgia's public policy in a manner that would prohibit it from being applied in this case.

It appears that the application of FIGA prohibits the instant case from proceeding against the Defendants.  First, FIGA clearly prohibits Federated, a member insurer, from suing Moody who is an insured of an insolvent insurer, Reliance, for subrogation of its claim paid on behalf of WEMC.  Second, even if Federated was permitted to bring a claim against the insolvency pool itself, that claim is time-barred as well outside the one-year statute of limitations.[6]  Queen v. Clearwater Elec., Inc., 555 So.2d 1262, 1264 (Fla. App. 2 Dist. 1989).  However, Florida law is not exactly clear regarding whether Federated is completely barred from bringing claims for an amount in excess of Moody's policy limits with Reliance.  Florida's insolvency statute provides that "covered claims" must be filed within the one-year deadline but case law from Florida

---

[6] The one-year period in this case would run from 90 days after Reliance was declared insolvent by the Commonwealth Court of Pennsylvania in October of 2001.

7

indicates that claims for an amount above the applicable policy limits may not be barred by the one-year limitation. See Queen, 555 So.2d at 1266. Therefore, Federated would theoretically be able to pursue a claim for indemnity and contribution for amounts above the policy limits.

In FIGA v. Jones, an insured's judgment creditor brought suit against the insolvency pool seeking a declaratory judgment that it was responsible for satisfying a judgment obtained in a prior negligence action against the insured of an insolvent insurer. Florida Ins. Guar. Ass'n, Inc. v. Jones, 802 So.2d 483 (Fla. App. 3 Dist. 2001). The Florida Court of Appeals held that the declaratory judgment action was barred by the one-year "limitations period for actions against either the insured or the guaranty association." Id. (citing Queen, 555 So.2 at 1264). Because the claimant had sued neither the insured nor FIGA within one year, the court found the entire case was barred and that the underlying negligence action against the insured had no bearing on the declaratory judgment action as far as relation back principles were concerned. The court did not discuss what the policy limits in that case were or to what extent FIGA would have been responsible for the same had the suit been timely filed. Ten years prior to that case, the Florida Supreme Court in Blizzard v. W.H. Roof Co., Inc. had explained that

> In creating the Florida Insurance Guaranty Association (FIGA), the legislature sought to assure a mechanism whereby injured parties could collect funds otherwise owed by an insurance carrier. It also safeguarded those who had sought to protect themselves by purchasing insurance policies. To effectuate its intentions, the legislature found it necessary to limit the time for filing claims. In 1983 the legislature added the phrase 'and the insured' to section 631.68, thereby extending the one-year time limit to actions against insureds.

Blizzard v. W.H. Roof Co., Inc., 573 So.2d 334 (Fla. 1991). Because the specific issue of whether the one-year period of limitations applies to non-covered claims was not before the court, it declined to address the issue. In a later case, Rubenstein v. Saldariagga, the Florida

8

Court of Appeals again indicated that the law was unsettled regarding the statute of limitations applying to amounts above the policy limits.  See Rubenstein v. Saldariagga, 699 So.2d 754 (Fla. App. 4 Dist. 1997).  Based on the foregoing, it is not entirely clear whether Federated may bring this case against Moody for an amount above the policy limits set forth in the Reliance policy.

Defendants' Motion for Summary Judgment is therefore GRANTED as to the applicability of FIGA.  However, pursuant to 28 U.S.C. 1292(b), the Court is of the opinion that this finding involves a controlling question of state law as to which there is substantial ground for difference of opinion and that an immediate appeal from this order may materially advance the ultimate termination of the litigation.[7]  Further, application for an appeal hereunder shall stay the proceedings in this Court because all other pending issues are directly relevant to and dependant upon the resolution of this issue.

**SO ORDERED this 29th day of September, 2005.**


**S/Wilbur D. Owens, Jr.
WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**

---

[7]This Court must certify the question to the Eleventh Circuit Court of Appeals because Florida law does not provide for certification of questions directly to the state supreme court from federal district courts.  See Liberty Mut. Ins. Co. v. Electronic Systems, Inc., 813 F. Supp. 802, 805 (S.D. Fla. 1993) ("A district court lacks the authority to certify questions to the Florida Supreme Court) (citing Fla. Const. art. V, § 3(b)(6); Fla.R.App.P. 9.150(a)).