IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **FEDERATED RURAL ELECTRIC INSURANCE EXCHANGE,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | 5:03-CV-247 (WDO) |
| | : | |
| **R.D. MOODY & ASSOCIATES, INC. and MASTEC NORTH AMERICA,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

This case arose out of a fatal accident that occurred on May 27, 2000 when Thomas Smith came into contact with a downed power line owned and maintained by Washington Electric Membership Corporation ("WEMC") and constructed by Defendant R.D. Moody & Associates ("Moody"). Mr. Smith's widow sued WEMC and its engineering firm for her late husband's injuries. Plaintiff Federated Rural Electric Insurance Exchange ("Federated") provided liability insurance coverage to WEMC. Federated settled with Mrs. Smith paying $6,500,000 on behalf of WEMC and the engineering firm paid $500,000. WEMC, substituted later by Federated, filed this case against Defendants Moody and MasTec, Moody's successor, for indemnification and contribution. WEMC alleged that Moody negligently constructed the power lines and utility poles in question. The matter is now before the Court on Defendants' motion for summary judgment in which Defendants

1

contend, *inter alia*, that the contract pursuant to which Moody constructed the poles provided that all risks and obligations Moody owed to WEMC were covered by an insurance policy purchased by Moody.

### *Summary Judgment Standard*

Summary Judgment is appropriate when the pleadings, depositions and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The Supreme Court has explained that the moving party's burden may be discharged "by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In Celotex, the Court held that summary judgment is appropriate against

> A party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Id. at 322-23. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact."

Pursuant to Georgia law, the construction of contracts "is a matter of law for the court." Southland Development Corp. v. Battle, 612 S.E.2d 12, 15 (Ga. App. 2005). If the

2

language of the contract in question is clear and unambiguous, "the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning." Id. "Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity" but the "existence or nonexistence of an ambiguity is a question of law for the court." Id. Finally, "[a]mbiguities in terms used in written contracts, and their meanings as understood in the trade and by the contracting parties, may be explained by parol proof of this trade usage and custom." Id.

***Contracts Applicable to this Action***

WEMC and Moody entered into a Distribution Line Extension Contract, REA Form 792, in the latter part of 1993.[1] The parties refer to this as the "1994 Contract." The dispute in this case centers around the parties' interpretation of how and when the risks and obligations arising under the contract shifted from one entity to another. The relevant provisions of the contract provided:

> ARTICLE II - CONSTRUCTION
>
> Section 4. Defective Workmanship.
> The acceptance of any workmanship by the owner shall not preclude the subsequent rejection thereof if such workmanship shall be found to be defective after installation, and any such workmanship found defective before final acceptance of the work or within one (1) year after completion shall be remedied or replaced, as the case may be, by and at the expense of the Contractor. In the event of failure by the Contractor so to do, the Owner may remedy such defective workmanship and in such event the Contractor shall pay

---

[1] Because this is a subrogation action, Federated "stands in the shoes" of WEMC and Federated is subject to all defenses Moody and MasTec have against WEMC. Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co., 111 F.3d 852, 859 (11th Cir. 1997).

to the Owner the cost and expense thereof. The Contractor shall not be entitled to any payment hereunder so long as any defective workmanship, in respect of the Project, of which the Contractor shall have had notice, shall not have been remedied or replaced, as the case may be.

ARTICLE IV – PARTICULAR UNDERTAKINGS OF THE CONTRACTOR

Section 1. Protection to Persons and Property.
The Contractor shall at all times take all reasonable precautions for the safety of employees on the work and of the public, and shall comply with all applicable provisions of Federal, State, and Municipal safety laws and building and construction codes, as well as the safety rules and regulations of the Owner.
. . .
f. The Project, *from the commencement of work to completion, or to such earlier date or dates when the Owner may take possession and control* in whole or in part as hereinafter provided *shall be under the charge and control of the Contractor* and *during such period of control by the Contractor all risks in connection with the construction of the Project* and the materials to be used therein *shall be borne by the Contractor. The Contractor shall* make good and *fully repair all injuries and damages to the project* or any portion thereof under the control of the Contractor by reason of any act of God or other casualty or cause whether or not the same shall have occurred by reason of the Contractor's negligence. The *Contractor shall hold the Owner harmless from any and all claims for injuries to persons or for damage to property* happening by reason of any negligence on the part of the Contractor or any of the Contractor's agents or employees *during the control by the Contractor* of the Project or any part thereof.
. . .
Section 2. Insurance.
The Contractor shall take out and *maintain throughout the construction period insurance* in the following minimum requirements: . . . b. Public liability and property damage liability insurance covering all operations under the Contract: limits for bodily injury or death not less than $1,000,000 for one person and $1,000,000 for each accident;
. . .
Section 4. *Delivery of Possession and Control to the Owner.*
Upon written request of the Owner, the *Contractor will deliver to the Owner full possession and control of any portion of the Project* provided the Contractor shall have been paid at least ninety percent (90%) of the cost of construction of such portion. *Upon such delivery of possession and control to*

*the Owner, the risks and obligations of the Contractor* as set forth in Section 1f of this Article IV with respect to such portions so delivered to the Owner, *shall be terminated*; Provided, however, that nothing herein contained shall relieve the Contractor of any liability with respect to defective workmanship as specified in Article II, Section 4.

The record shows that, pursuant to Article IV, Section 4, possession and control of the line that injured Mr. Smith was turned over to WEMC in 1997. Thus, under the terms of the 1994 Contract, any risks and obligations that Moody bore with respect to personal injuries arising out of the project terminated more than three (3) years before the incident involving Mr. Smith.[2]

Even if the contractual terms were not clear regarding the termination of Moody's liability, the contract further provided that, as part of the bargain, liability for the claim in this case shifted to an insurance policy purchased by Moody.[3] "It has been recognized by numerous authorities that where parties to a business transaction mutually agree that

---

[2]Plaintiff Federated attempts to create a question of fact as to Moody's liability by its reference to the clause that provided an indemnity agreement would be given by Moody to WEMC contingent on payment of the contract price. The relevant provision, Article IV, Section 4, provided that upon WEMC's request Moody would deliver to WEMC "full possession and control" of the project provided that Moody had been paid at least 90% of the project's cost. However, the next sentence of that section provides that upon turnover of possession and control to WEMC, Moody's risks and obligations "shall be terminated." While Moody had a right to withhold possession and control if 90% of the contract price was not paid, there is no evidence possession and control was *not* turned over. Rather, the record shows WEMC paid for invoices submitted by Moody through 1999. See Decl. of Mary Ellen Bussell. Whether an indemnity agreement ever changed hands is irrelevant. First, there is no valid, signed indemnity agreement in the record that was ever incorporated into the main contract. The contract only contains an *example* of an indemnity agreement that could have been signed but there is no record of an indemnity agreement being signed and given by Moody to WEMC. Further, the only specific, applicable contractual language presented to the Court is the language that provided that all of Moody's risks and obligations were terminated at the project's conclusion.

[3]See also Declaration of Ron Moody and attachments thereto.

insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party." Tuxedo Plumbing & Heating Co., Inc. v. Lie-Nielsen, 262 S.E.2d 794 (Ga. 1980) (where building owner sued plumbing contractor to recover for fire damage allegedly sustained because of contractor's negligence, court held owner could not recover from contractor where parties had previously contracted for insurance to cover such loss). "As in any situation involving the construction of a contract, magic words are not required, and the goal of the court is to look for the intent of the parties." Glazer v. Crescent Wallcoverings, Inc., 451 S.E.2d 509, 512 (Ga. App. 1994). The parties contracted for Moody's policy to cover any loss caused during the period that the project was under Moody's possession and control. When the project for the lines was completed, all risk shifted to WEMC. WEMC could have contracted for a longer period of coverage for post-construction, post-policy claims, but did not.

Plaintiff Federated argues that the 1994 Contract is not the controlling contract because the 1994 Contract stated it had a term of one year, and that 9 months into that one-year period WEMC solicited bids from other contractors for the remainder of the work on the lines. In September of 1994, WEMC did enter into a contract with another entity, Pike Electrical. Federated contends this "1995 Contract" caused the 1994 Contract to no longer be in effect. However, in September of 1995, Moody began work on the project again after

Moody sent WEMC a "Cost Plus Proposal" that set forth additional terms pursuant to which the line project would be completed. While Federated argues the parties were working *only* pursuant to this "Cost Plus Proposal for Line Construction,"[4] that argument is not supported by the record. First, it is absurd to think that these parties would have entered into such a working arrangement when the terms set forth in the Cost Plus Proposal pertained only to labor rates and billing considering the depth into which the 1994 and 1995 contracts went regarding the specific terms of the project. Second, the portion of the contract entitled "Term of Contract," provided only that the contractor would not be required to commence any construction after the expiration of one year following acceptance of the contract.[5] Further, the facts in the record and the applicable federal regulations do not support the contention that the contract would automatically terminate after one year or that during the relevant time period the parties were operating only pursuant to the "Cost Plus Proposal."

The 1994 and 1995 contracts set forth that from "time to time" the parties may negotiate for the performance of work at labor prices which could differ from those in the original contract but that the provisions of the "Contract" would otherwise apply.[6] Importantly, the terms of the 1994 and 1995 contracts were nearly identical as to risks of loss, responsibility for insurance and other relevant terms but nothing in the 1994 Contract

---

[4]Doc. No. 75-10.

[5]Art. II, Sec. 6.

[6]Art. I, Sec. 2.

indicated it would become void or in any way *in*applicable if WEMC entered into a contract with another entity before the project was completed. The only evidence in the record on this point, other than the language of the contract, are statements by Ron Moody, Defendant Moody's former president, stating it was the usual course of business for these types of entities to construct power lines pursuant to agreements such as the 1994 Contract and later addenda such as the "cost plus" amendments.[7]

Moreover, pursuant to 7 C.F.R. § 1726.51, these entities were required to work pursuant to very specific contracts, and in particular the REA/RUS form contracts that are in the record. The parties would have been prohibited by federal regulations to work only pursuant to the Cost Plus Proposal as argued by Federated.

Based on the clear language of the contract in question, Federated is unable to recover from Moody and/or MasTec for the claim involved in this case. Defendants' motion for summary judgment is GRANTED and judgment shall be entered in Defendants' favor.

**SO ORDERED this 12th day of July, 2007.**

**S/
WILBUR D. OWENS, JR.
UNITED STATES DISTRICT JUDGE**

---

[7] See Moody Dep., pp. 24-30; Declaration of Ron Moody. Federated contends its "evidence" to the contrary is its declarations from individuals stating that only one contract was in effect at any given time. However, this contention is not supported by the record, and is in fact refuted by the contracts in the record.